## Commonwealth v. Mellon National Bank and Trust Company.

104

Argued May 27, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Harry F. Stambaugh*, Special Deputy Attorney General, and *Carl F. Chronister*, Deputy Attorney General, with them *T. McKeen Chidsey*, Attorney General, for petitioner.

*William H. Wood*, with him *Roy J. Keefer*, *Geo. Ross Hull* and *Hull, Leiby & Metzger*, for intervening defendant.

OPINION BY MR. CHIEF JUSTICE MAXEY, September 27, 1948:

The Commonwealth petitions this Court for a Writ of Prohibition enjoining the Dauphin County Court from enforcing its subpœnas duces tecum directed to the Secretary of Revenue at the trial pending before

it in which the Mellon National Bank and Trust Company, successor to the Mellon National Bank, appealed from the resettlement made in March 1940 of the tax on its shares by the Departments of Revenue and Auditor General. The subpœnas call for the production of the tax on shares reports as well as all other sustaining documents relating thereto of all trust companies, banks and trust companies, national banks and national banks and trust companies filed with the Department of Revenue for the year 1934 upon which the resettlements are made.

The legal purpose for which the reports and other documents were to be used by the appellant was to prove that the tax imposed upon the shares of the national banks and national banks and trust companies under the provisions of the Act of 1897, P. L. 292, as amended, 72 PS 1931-1932, constitutes a substantially greater burden than the similar tax imposed upon the shares of trust companies and banks and trust companies which were incorporated under the laws of this Commonwealth and liable to taxation under the Act of 1901, P. L. 640, as amended, 72 PS 1991-2011,[1] and therefore, violates the provisions of Sec. 5219 of the Revised Statutes 12 U. S. C. Sec. 548, and Art. VI, Cl. 2, and Art. I, Sec. 8, Cl. 5 of the Constitution of the United States, which prescribes the extent to which a state may tax shares of national banks.[2] It contends that certain

---

[1] The Bank contends in its Brief ". . . that there is sound basis for the defendant's position that the information sought by the subpœnas duces tecum will establish this substantial inequality in aggregate tax burden, as between National Banks" and State Banks. "In the defendant's case the tax upon its share for the year 1934, as computed under the Act of 1897, P. L. 292, was $145,783.65, whereas such tax computed under the Act of 1907, P. L. 640, would be only $20,-158.62, a difference of $125,625.03."

[2] Section 5219 of the Revised Statutes provides: "(b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of National banks; . . ."

information from the reports of shares filed with the Commonwealth by these companies and the tax settlements made on the basis of such reports will satisfactorily establish the alleged violation of Sec. 5219 by the Commonwealth.

Though the Commonwealth resisted the issuance of the subpœnas, the Court directed their issue, "unless counsel on both sides agree that the subpœnas shall issue for the documents relating to a limited number of national banks and national banks and trust companies, and State banks and State banks and trust companies, which will be representative of each class for the purpose of ascertaining the facts in issue". The subpœnas then were issued for the trial of March 23, 1948, and service thereof was accepted by the Secretary of Revenue.

On March 17, 1948, the Commonwealth asked for a writ of prohibition alleging that the production of the

---

In *First National Bank v. Anderson*, 269 U. S. 341, 70 L. Ed. 295, the Court said in summarizing its decisions with reference to the restriction on the taxation of shares (U. S., p. 347) :

"1. The purpose of the restriction is to render it impossible for any State, in taxing the shares, to create and foster an unequal and unfriendly competition with national banks, by favoring shareholders in state banks or individuals interested in private banking or engaged in operations and investments normally common to the business of banking.

"3. Moneyed capital is brought into such competition where it is invested in shares of state banks or in private banking; . . .

"4. The restriction is not intended to exact mathematical equality in the taxing of national bank shares and such other moneyed capital. . . . But every clear discrimination against national bank shares and in favor of a relatively material part of other moneyed capital employed in substantial competition with national banks is a violation of both the letter and spirit of the restriction. . . ."

[3] Section 731 of The Fiscal Code (supra) provides, inter alia, as follows:

"Any information gained by any administrative department, . . . as a result of any returns, . . . , required or authorized under the statutes of the Commonwealth imposing taxes or bonus for State purposes, . . . , shall be confidential except for official purposes. . . ." The violation of this section is made a misdemeanor.

reports and other documents would violate the provisions of Section 731 [3] of The Fiscal Code of April 9, 1929, P. L. 343, as amended by the Act of July 9, 1941, P. L. 305, 72 PS Section 731, providing that they be kept confidential except for official purposes, and that the disclosure of the information contained therein would be prejudicial to the best interests of the public.

Ferris in *Extraordinary Legal Remedies* (p. 439 et seq.) said: "It is well settled that a writ of prohibition may not be used to usurp or perform the functions of an appeal, writ of error or certiorari, or to correct any mistakes, errors or irregularities in deciding any question of law or fact within its jurisdiction. The office of the writ, as at common law, is to prevent an unlawful assumption of jurisdiction, not to correct mere errors and irregularities in matters over which the court has cognizance. Where the general scope and purpose of the action is within the jurisdiction of the court, any error or overstepping of its authority in a portion of its judgment, or any other error in its proceedings, is only ground for a review or appeal, and not prohibition. That is to say, where there is authority to do the act, but the manner of doing it is improper, the writ will not lie. In other words, whatever power is conferred may be exercised, and, if it be exercised injudiciously, erroneously or irregularly, it amounts to error merely and not to a usurpation or excess of jurisdiction. In such a case, however gross the error, irregularity or mistake, the writ does not lie, not because, as is sometimes erroneously or irregularly, it amounts to error merely or such remedies are inhibited, but for the reason that there has been no usurpation or abuse of power."

The American and English Encyclopædia of Law (2d Ed.), Vol. 23 at p. 200 sums up the law applicable to writs of prohibition as follows: "Where the inferior court has jurisdiction of the matter in controversy, prohibition will not lie. The writ does not lie to prevent a subordinate court from deciding erroneously or from

enforcing an erroneous judgment in a case in which it has a right to adjudicate, and it matters not whether the court below has decided correctly or erroneously; its jurisdiction of the matter in controversy being conceded, prohibition will not lie to prevent an erroneous exercise of that jurisdiction. The exercise of power which it is sought to prohibit must be wholly unauthorized by law. Mere errors or irregularities in the proceedings which do not go to the jurisdiction . . . of the inferior court to take the proposed action, and the merits of the action will not be considered." To the same effect is 50 Corpus Juris, sec. 3, p. 655.[4]

In *Jacobs v. United States* (C. C. A. 9) 8 F (2) 981, the defendant petitioned to quash the search warrant issued in the criminal action and to suppress as evidence certain property seized by virtue of the search warrant. The petition was denied and an appeal was taken. "Afterwards, the court, having signified its intention to proceed with the trial of the case, defendants applied . . for a writ of prohibition, to have the District Court restrained from proceeding. The United States attorney moves to dismiss the writ of error, upon the ground that the order of the District Court was interlocutory, and not appealable." Circuit Judge HUNT held "that, where one is charged with a criminal offense, an order denying his petition . . . for the exclusion of the use of property seized, as evidence in a criminal action, is not a final order or decision, within the exercise of the appellate jurisdiction of this court." He distinguishes the line of cases in the Federal Courts where the order was declared final only because it was in an independent proceeding and not, as here, in a proceeding then pending. There is an analogy between that case and the one

---

[4] See *People ex rel. Childs v. Extraordinary Trial Term*, 228 N. Y. 463, 127 N. E. 486; *Alexander v. Crollott*, 199 U. S. 580; *Zinn v. District Court*, 114 N. W. 475; *State ex rel. Pabst v. Circuit Court*, 199 N. W. 213; *State ex rel. De Puy v. Evans*, 60 N. W. 433; *Ex Parte Oklahoma by Haskell, Governor*, 220 U. S. 191.

now before us. Here also the proceedings are pending. By this independent writ, the Commonwealth now attempts to control the introduction of evidence. The allegation that the evidence whose introduction was sought was evidence forbidden by law does not in the slightest degree affect the jurisdiction of the court below, and therefore it creates no reason for the issuance by this court of a writ of prohibition.

The order of the Court below in directing the issuance of the subpœna for the evidence is interlocutory. There is no appeal from such an order. A writ of prohibition cannot substitute as an appeal, otherwise the writ of prohibition could be used every time a litigant believes that the Court erred in admitting testimony. If it erred, it can be made the subject of review by due appeal from any judgment entered in the matter. A case cannot be brought in an Appellate Court in fragments. See *Arnold v. U. S.* 263 U. S. 427, 68 L. Ed. 371, 44 S. Ct. 144. To be the subject of an appeal, the judgment must not only be final and complete not only as to all the parties but as to the whole subject matter and as to all the causes of action involved except where a statute gives the right of appeal otherwise. In this case there is no statutory right of appeal.

The right of the Mellon National Bank to appeal from the decision on the resettlement of this tax has not been challenged. The forum provided by our legislature for all such appeals is expressly vested in the Court of Common Pleas of Dauphin County: Sec. 1104, Act of April 9, 1929, P. L. 343, Art. XI, 72 PS Sec. 1104, as amended May 7, 1943, P. L. 229, Sec. 5.

The Commonwealth's position is that the exercise of power by the Dauphin County Court in ordering the issuance of the subpœnas for the production of the specific reports which it is sought to prohibit is one wholly forbidden by the law and therefore the situation calls for the exercise of the jurisdiction of this Court to issue a writ of prohibition.

The late President Judge HARGEST of the Court below made this answer to that argument and we think his answer is conclusive. "The purpose of this Section is to prohibit voluntary disclosures. It is not intended to defeat justice by prohibiting the production of necessary records in judicial proceedings.

"In Maryland Casualty Co. v. Clintwood Bank (Va.), 154 S. E. 492, a subpœna duces tecum was sought to compel the production of certain letters and reports for examination in court. The production was resisted on the ground that the Virginia Act provided that such information should be kept confidential. The statutory provision was analogous to Sec. 731 of the Pennsylvania Fiscal Code. The Court held: 'These statutory provisions should be construed to relate to information of a confidential nature affecting the business of a bank. *They should be strictly construed, when invoked for the limitation of judicial inquiry, and are subject to the right of every litigant to call for and produce evidence affecting his substantial rights.* . . . The latter part of the section prohibiting employees or officers of the state from imparting such information clearly means the voluntary imparting of such information. . . . *'It was not intended to impede the administration of justice in the courts by the suppression of pertinent testimony.'* " (Italics supplied.)

"In Bell v. Bankers Life & Casualty Co. (Ill.), 64 N. E. (2) 204 (1945), suit was brought upon an insurance policy; and one of the issues was whether the insured had misrepresented his age when application for the policy was made. It was contended that the records of the Bureau of Public Welfare were inadmissible because of a section of the statute which was similar to Sec. 731 of the Pennsylvania Fiscal Code. The Court said, page 208:

" 'This prohibition was clearly intended to forbid voluntary disclosures but it was never intended to prevent the disclosure of the contents of official documents pur-

suant to the compulsion of a subpœna where the contents of such documents are pertinent to a legal inquiry.' . . ."

"The Banking Code of 1933, P. L. 565, 71 PS Sec. 733-302 expresses the public policy of the State with reference to the disclosures of information obtained by the department. It provided:

" 'A. Neither the secretary, nor any deputy, examiner, clerk, or other employee of the department, shall publish or divulge to anyone any information . . . except when the publication or divulgement of such information is made by the department pursuant to the provisions of this Act . . ., *or when the production of such information is required by subpœna or other legal process of a court of competent jurisdiction,* or when it is used in prosecutions or other court actions instituted by or on behalf of the department.' " (Italics supplied.)

"We are of opinion that the legislature, in Section 731, when it provided against the disclosure of information 'except for official purposes', had in mind proper judicial proceedings. . . .

"We are of opinion that when the legislature provided that these reports should be confidential, 'except for official purposes', it did not intend to permit the Commonwealth to shield itself behind a public policy rule by alleging that to produce the information was detrimental to the public interest, where no such detriment was shown, and thus to thwart a proper judicial investigation of facts which the taxpayer was required to produce and which the Commonwealth possessed. . . ."

We cannot find that this ". . . establishes the right of any attorney to subpœna the production of any records in the possession of the Department—indeed of any administrative department, including the Department of Justice—and to offer them for any purpose in any proceeding in any Court?', of which the Attorney General is so apprehensive. It simply means that upon a proper showing and for a proper and legitimate purpose as in this case, the evidence may be subpœnaed, and the man-

ner and the extent of the disclosure of the contents of such records still remain under the discretionary control of the trial judge.[5]

Since the court below was acting within its jurisdiction when it directed that the subpœna issue, this record presents no case for a writ of prohibition.[6] If the evidence whose production is asked for by the Mellon National Bank and Trust Company is not legal evidence, its admission cannot be interfered with by us at this

---

[5] Counsel for the Bank have suggested in a separate memorandum filed in this case that "it could probably meet the minimum burden of proof required in this case by the decisions of the Courts, without having *all* of such documents produced by subpœnas duces tecum, if either of the following two procedures were to be followed:

"(a) Each party would select a group of 25 national banks and national banks and trust companies and 25 trust companies and banks and trust companies to be used as a 'sample', and the Department of Revenue would then compute the total capital, surplus and undivided profits of each of these group of 50 institutions, and the total shares tax paid by each of such groups in 1934. These *total figures only* would be introduced into evidence, coupled with an appropriate stipulation which would make the figures ascertained from the 'sample' controlling in the case.

"(b) The Department of Revenue would compute the total capital, surplus and undivided profits of *all* national banks and national banks and trust companies and the total shares tax paid by *all* such institutions in 1934; and also the total capital, surplus and undivided profits of *all* trust companies and banks and trust companies and the total shares paid by *all* such institutions in 1934."

The production of all the documents specified in the subpœna duces tecum could then "be used for the limited purpose of developing the general and non-confidential statistics needed to establish its claim of tax discrimination".

This is a plan of procedure which counsel can propose to the court at the trial of this case and the court can take any action in respect to the plan which it deems appropriate.

[6] If in the trial of a case it was proposed to subpœna or introduce evidence of facts whose disclosure (1) would be prejudicial to the public interest or destructive to the rights of individuals or (2) was prohibited by law, this court possesses the power upon cause shown to certiorari the entire record before it and to make such order as right and justice requires. See *Commonwealth v. Ragone*, 317 Pa. 113, 126-7, 176 A. 454.

stage of the case. The question of legality of the evidence can be decided by this Court when an appeal is taken from the final order of the court below.

The rule heretofore granted to show cause why the Writ of Prohibition should not be issued is discharged.

———

DISSENTING OPINION BY MR. JUSTICE JONES:

I would grant the writ.

Indeed, it is difficult for me to suppose a more compelling occasion for the exercise of the extraordinary remedy. In *Carpentertown Coal & Coke Company v. Laird*, 360 Pa. 94, 61 A. 2d 426, p. 100, Mr. Justice HORACE STERN, after a painstaking review of the historical background of the writ of prohibition and its use in practice, pertinently observed that ". . . its [the writ's] purpose . . . is . . . to control and manage the inferior court itself and prevent it from usurping jurisdictions and powers which it does not constitutionally and legally possess". The same opinion further points out that the writ is not issued ". . . where there is a complete and effective remedy by appeal, certiorari, writ of error, injunction, or otherwise: [citing cases]". Conversely, the writ may be appropriate where none of the above-listed remedies exists.

In the present case, the Court of Common Pleas of Dauphin County, at the instance of a private litigant, issued its subpœna *duces tecum* calling upon the Secretary of Revenue to produce for use at the trial of the particular litigation tax returns for certain years filed in the office of the Secretary of Revenue by national banks, national banks and trust companies, banks, and trust companies. The Secretary of Revenue seeks a writ of prohibition in order to supersede the subpœna because Sec. 731 of The Fiscal Code of 1929, P. L. 343, as amended by the Act of June 6, 1939, P. L. 261, and the Act of July 9, 1941, P. L. 305 (72 PS § 731), expressly provides that such returns and reports, as well as the informa-

tion contained therein, shall be confidential and privileged (save in a certain contingency not presently material).

Plainly enough, the issuance of the subpœna is not appealable; and, if the question of its propriety be made to await an appeal following final judgment (the subpœna having been enforced in the meantime), the statutorily prescribed confidence will have been irremediably breached.

There is, of course, another way open for testing the power of the court to ignore the provisions of the statute and that is for the Secretary of Revenue to disobey the subpœna and assign in justification of his action his sworn duty in the premises. Actually, this Court's present decision goes no further than to hold that a writ of prohibition is not the proper means to thwart the enforcement of a questioned subpœna duly issued out of a court of competent jurisdiction. But, the subpœnaing of the tax returns for incorporation in a record open to public inspection is such a patent violation of the "Confidential Information" provision of the statute as to amount to a usurpation by the issuing court of a power which it does properly possess.

Consequently, I cannot see any justifiable need or purpose for putting the Attorney General to the necessity of advising the Secretary of Revenue to disobey the subpœna in order that the controlling effect of the statute may be tested directly. And, particularly, is that so since a remedy which necessarily invites, as an alternative, possible punishment for contempt has been held not to be "an adequate remedy": *Mayers v. Bronson*, 100 Utah 279, 114 Pac. (2d) 213, 215-216 (1941).

Mr. Justice DREW and Mr. Justice ALLEN M. STEARNE join in this dissent.