Commonwealth ex rel. DiEmilio, Appellant, *v.* Shovlin.

Argued May 2, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*George P. Noel,* with him *Gibbons, Buckley & Smith,* for appellant.

*Philip J. O'Malley,* Assistant District Attorney, with him *Ralph B. D'Iorio,* Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, in propria persona, for Delaware County District Attorney.

*Marx S. Leopold,* Assistant Attorney General, with him *J. Shane Creamer,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, October 4, 1972:

Appellant Ralph C. DiEmilio was arrested on March 20, 1970, and subsequently charged with the murder of his wife. Appellant's trial was delayed over a year while a determination was made as to his mental capacity to stand trial. The trial before a jury commenced on October 26, 1971. At the outset of the trial three psychiatrists, representing appellant, the district attorney, and the institution in which appellant was hospitalized after his arrest, unanimously testified that appellant was legally insane at the time of the crime in question as determined by the M'Naghten test.[1] After

_____

[1] *Commonwealth v. Melton,* 406 Pa. 343, 178 A. 2d 728 (1962), cert. denied, 371 U.S. 851, 83 S. Ct. 93 (1962).

hearing this testimony the trial court directed the jury to find appellant not guilty by reason of insanity. Thereafter the court committed appellant to Farview State Hospital, a maximum security mental institution for the criminally insane.

In a letter dated December 22, 1971, Dr. John P. Shovlin, Superintendent of Farview State Hospital, recommended to the trial court that appellant be transferred to Haverford State Hospital. The basis of this recommendation was Dr. Shovlin's considered professional judgment that appellant's illness did not require maximum security, and appellant's treatment would be facilitated by transfer to another institution. The transfer request was denied by the trial court and appellant thereupon instituted the present writ of habeas corpus, seeking transfer to another hospital pursuant to Dr. Shovlin's recommendation. After dismissal by the court of his writ of habeas corpus, appellant appealed to this Court. Because we find that the court, in denying the transfer request, erroneously relied upon repealed statutory provisions, we reverse and remand.

The court committed appellant and considered his transfer request under the terms of the Act of March 31, 1860, P. L. 427, §66, as amended, 19 P.S. §1351 (hereinafter Act of 1860).[2] That act by its language is

---

[2] That section states: "In every case in which it shall be given in evidence upon the trial of any person charged with any crime or misdemeanor, that such person was insane at the time of the commission of such offense, and he shall be acquitted, the jury shall be required to find specially whether such person was insane at the time of the commission of such offense, and to declare whether he was acquitted by them on the ground of such insanity; and if they shall so find and declare, the court before whom the trial is had shall order the cost of prosecution to be paid by the county, and shall have power to order him to be kept in strict custody, in such place and in such manner as to the said court shall seem fit, at the expense of the county in which the trial is had, so long as

applicable to situations where the jury found that a defendant was "insane at the time of the commission of . . . [the] offense." The Act of 1860 specifically states that the court has the power to keep an individual in "strict custody . . . in such place and in such manner as to the said court shall seem fit. . . ." The act further provides that the defendant shall remain in "strict custody . . . so long as such person shall continue to be of unsound mind. . . ." The court made a finding of fact that defendant was not of "sound mind" and on that basis refused to grant the transfer request.

The Act of 1860, however, was repealed and replaced by the Legislature's enactment of the comprehensive Mental Health and Mental Retardation Act of 1966.[3] Section 413 of that act, effective since January 1, 1967,[4] explicitly governs those situations where a defendant is found not guilty by reason of insanity. In pertinent part that section reads: "Whenever any person charged with any crime is acquitted on the ground of insanity . . . the court may direct the Attorney for the Commonwealth[5] to act as petitioner to initiate commitment proceedings under section 406."

Section 406 is a general provision governing all commitments.[6] A person committed under section 406 may

---

such person shall continue to be of unsound mind." Act of March 31, 1860, P. L. 427, §66, as amended, 19 P.S. §1351.

[3] Mental Health and Mental Retardation Act of October 20, 1966, Special Sess. No. 3, P. L. 96, art. I, §§101 et seq., 50 P.S. §§4101 et seq.

[4] Id. §704, 50 P.S. §4704.

[5] Section 102 of the Mental Health and Mental Retardation Act of 1966 defines "Attorney for the Commonwealth" as a "district attorney, the Attorney General, or any attorney representing the interests of the Commonwealth."

[6] Section 406 reads in pertinent part: "(a) Whenever a person is believed to be mentally disabled, and in need of care or treatment by reason of such mental disability, and examination of such person has been made by a physician or physicians, or for any reason

be transferred from one facility to another without court approval upon application by the director of any state operated or local facility to the Department of Public Welfare.[7] Similarly an individual committed under section 406 may be released as soon as care and treatment in a facility "is no longer necessary" without first having sought or received court approval.[8]

Thus the Mental Health and Mental Retardation Act of 1966 evidences a clear legislative intent that those defendants acquitted on the ground of insanity were to be accorded the same procedural safeguards when committed for medical treatment as any other individual committed under section 406. To achieve that end the Legislature by its Mental Health and Mental

---

the examination of such person cannot be made, a petition may be presented to the court of common pleas of the county in which a person resides or is, for his immediate examination or commitment to an appropriate facility for examination, observation and diagnosis."

[7] Mental Health and Mental Retardation Act of October 20, 1966, Special Sess. No. 3, P. L. 96, art. IV, §416, 50 P.S. §4416. Under Section 416(d) it is clear that when it is recommended by the director of any state operated facility that an individual should be transferred from a maximum to a minimum security (local) institution the "committing court" *must* approve the transfer and *normally* no hearing will be required. Similarly if it is recommended by the director of any state operated facility that an individual be transferred from one minimum security (local) institution to another, the "committing court" *must* approve said transfer and *ordinarily* no hearing will be necessary. If, on the other hand, the recommendation is that the individual should be transferred from a minimum to a maximum security (state) institution, the Commonwealth must establish at a hearing that the individual's conduct is so potentially dangerous that he cannot be treated at the institution for civil committees, and that his illness could be beneficially treated only at a maximum security institution. See *Williams v. Robinson*, 432 F. 2d 637 (D.C. Cir. 1970); *People v. Lally*, 19 N.Y. 2d 27, 277 N.Y.S. 2d 654, 224 N.E. 2d 87 (1966).

[8] Id. §418, 50 P.S. §4418.

Retardation Act of 1966 repealed the Act of 1860 by providing in section 4701(b) of the Mental Health and Mental Retardation Act of 1966: "All other acts and parts of acts are repealed in so far as they are inconsistent herewith."[9]

In enacting the Mental Health and Mental Retardation Act of 1966 the Legislature not only established a comprehensive program for the commitment and medical treatment of *all* mentally disturbed individuals but it also anticipated and prevented the denial of equal protection held impermissible in the seminal case of *Baxstrom v. Herold,* 383 U.S. 107, 86 S. Ct. 760 (1966).[10] The United States Supreme Court in *Baxstrom* made it clear that the equal protection clause would not countenance a state committing a criminal defendant whose sentence was about to expire without the procedural due process safeguards accorded the non-criminal mentally disturbed. Similarly the Court in *Jackson v. Indiana,* 406 U.S. 715, 92 S. Ct. 1845 (1972), held that the equal protection and due process clauses were violated when a defendant incompetent to stand trial was committed under provisions which differed from commitment safeguards accorded all other mentally disturbed individuals.

Subsequent federal and state cases interpreting and applying *Baxstrom* have recognized that "one who has

---

[9] Although of course not dispositive of the issue presented today, we note that the Commonwealth conceded both in its brief and at oral argument that the Mental Health and Mental Retardation Act of 1966 effectively repealed the Act of 1860.

[10] Although we find that the Legislature clearly intended to and in fact did repeal the Act of 1860, as conceded by the Commonwealth, it is to be observed that any construction which retained the Act of 1860 would contravene the familiar principle that "the Legislature does not intend to violate the Constitution of the United States. . . ." Act of May 28, 1937, P. L. 1019, art. IV, §52, 46 P.S. §552.

been adjudicated not guilty by reason of insanity is entitled to the same procedures used to determine committability of an individual who is not otherwise before a court." *United States ex rel. Schuster v. Herold*, 410 F. 2d 1071, 1082 (2d Cir.), cert. denied, 396 U.S. 847, 90 S. Ct. 81 (1969). See *Bolton v. Harris*, 395 F. 2d 642 (D.C. Cir. 1968); *Cameron v. Mullen*, 387 F. 2d 193 (D.C. Cir. 1967); *People v. Lally*, 19 N.Y. 2d 27, 277 N.Y.S. 2d 654, 224 N.E. 2d 87 (1966).

In light of the clear provisions of the Mental Health and Mental Retardation Act of 1966, which entitles appellant to his transfer request, we reverse the trial court's dismissal of the writ of habeas corpus and remand the record for proceedings consistent with this opinion.

Mr. Justice EAGEN and Mr. Justice POMEROY concur in the result.

———————

CONCURRING AND DISSENTING OPINION BY MR. CHIEF JUSTICE JONES:

Since the Court in 1971 committed the appellant, Mr. DiEmilio, and considered his transfer request under the terms of the Act of March 31, 1860, P. L. 427, §66, *as amended*, 19 P.S. §1351, and not under the terms of the Mental Health and Mental Retardation Act of October 20, 1966, Spec. Sess. No. 3, P. L. 96, art. I, §101 *et seq.*, 50 P.S. §4101 et seq., the question should have been whether both the commitment and refusal of transfer were improper because Section 1351 of the Act of 1860 was repealed by Section 701(b) of the Act of 1966, as inconsistent with the later Act. Both Acts provide for defendants found not guilty by reason of insanity. The inconsistency concerns the role of the court in the commitment and transfer process.

The majority opinion holds that as to transfers the Act of 1860 is expressly repealed and replaced by the

Act of 1966. The opinion, however, seems to be concerned with both commitments of individuals found not guilty by reason of insanity and transfer of those individuals once committed. Therefore, the majority opinion is somewhat unclear as to whether both Section 1351 commitments and transfers are invalid. Assuming Section 1351 is invalid, the majority opinion fails to discuss Section 406 commitments under the Act of 1966, of those individuals acquitted by reason of insanity. Briefs were filed by the appellant, the District Attorney of Delaware County and the State Attorney General. All three briefs discuss both the commitment and transfer of Mr. DiEmilio.

## Commitment

Section 1351 of the Act of 1860 states that after an individual has been acquitted because of insanity the court has the power to keep an individual in "strict custody, in such place and in such manner as to the said court shall seem fit." Section 413 of the Act of 1966 states: "Whenever any person charged with any crime is acquitted on the ground of insanity . . . the court may direct the Attorney for the Commonwealth to act as petitioner to initiate commitment proceedings under section 406." Section 406 outlines the procedure to be followed before an individual can be committed, whereas Section 1351 gives the court the power to commit someone but does not require specific procedures, as outlined in Section 406, *i.e.,* petition, hearing, examination and order of commitment. The plain meaning of Section 413 of the Act of 1966 is that after acquittal by reason of insanity the court may or may not direct the Attorney for the Commonwealth to initiate commitment proceedings, but if it so directs the Attorney, it must be to initiate a commitment proceeding under Section 406. As to commitments, Section 1351 of the

Act of 1860 is repealed by the Act of 1966 and, therefore, Mr. DiEmilio should be recommitted under Section 406 of the Act of 1966.

Section 406, however, is a general commitment statute and fails to provide specifically for commitment of individuals previously found not guilty by reason of insanity. That is, it fails to recognize the possible dangerous tendencies of such individuals. Section 1351 provided that individuals acquitted by reason of insanity would be kept in "strict custody." Admittedly, not all such individuals would require such detention. But it is erroneous to say that all such individuals would not require such detention. Therefore, even though the Act of 1966 supersedes the Act of 1860, Section 406 must be read with this in mind and the committing court must still be able to commit an individual acquitted of a crime by reason of insanity to a maximum security institution.

The proposed reading of Section 406 would not violate the Equal Protection Clause. The Equal Protection Clause is not violated where reasonable classifications exist to justify separate treatment. To apply Section 406 to ordinary civil commitments and those civil commitments resulting from the individual's acquittal because of insanity affords both the same procedural safeguards. That those acquitted of a crime because of insanity may be more readily sent to maximum security institutions is the only possible difference in the application of Section 406 to either case. *Baxstrom v. Herold*, 383 U.S. 107 (1966), would not prohibit such a difference. The petitioner in *Baxstrom* was committed at the end of his penal sentence without a judicial determination that he was dangerously mentally ill. He was committed under a statutory procedure by which a person could be civilly committed at the end of his penal sentence without the review available to

all others civilly committed. Applying Section 406 to the instant case, appellant was afforded a judicial determination on his mental state and by standards identical to those committed who are noncriminal mentally disturbed. The Court in *Baxstrom* said: "Classification of mentally ill persons as either insane or dangerously insane of course may be a reasonable distinction for purposes of determining the type of custodial or medical care to be given. . . ." 383 U.S. at 111.

### Tranfers Between Facilities

Section 1351 of the Act of 1860 further states that the court shall have the power to order that the individual remain in "strict custody . . . so long as such person shall continue to be of unsound mind." If committed under the Act of 1966, according to Section 416 the individual may be transferred from one facility to another without court approval. (The Legislature in the Act of 1966 specifically provided for court approval in certain transfer situations, *i.e.*, §416(d).) As to transfers between facilities, Section 1351 of the Act of 1860 is also inconsistent with the Act of 1966 and thus repealed. Therefore, Mr. DiEmilio could be transferred according to Section 416 of the Act of 1966 without court approval "upon application by the director of any state operated facility" to the Department of Public Welfare. However, since I would direct the lower court to recommit Mr. DiEmilio under Section 406 of the Act of 1966 his transfer request should be postponed until it is determined where he will be recommitted.

There is no case law under the Act of 1966 on these issues. *Commonwealth v. Jenkins*, 21 Pa. D. & C. 2d 413, 419 (1960), decided under the Mental Health Act of 1951, said that the Act of 1951 did not repeal the Act of 1860. *Jenkins*, however, dealt with an inconsisten-

cy between two sections of the Act of 1951 and not with the inconsistency between the Act of 1951 and the Act of 1860. The Act of 1966 specifically repeals the Act of 1951. 50 P.S. §4701(a).

It is interesting to note that the lower court judge refused to grant habeas corpus for the transfer of Mr. DiEmilio because he was to be transferred to Haverford Hospital. Haverford had taken Mr. DiEmilio on a voluntary commitment in January 1970 and released him in February 1970, with the same diagnosis presently given to justify his transfer from a maximum security institution. In March of 1970 he killed his wife.

The majority opinion also states that the Act of 1966 is concerned with affording the individual committed procedural safeguards. What procedural safeguards are available if the court's role is terminated in this type of transfer case and all discretion is left with the medical personnel? Suppose the situation were reversed: Mr. DiEmilio being acquitted because of insanity for a lesser offense and committed under the Act of 1966 to a standard State mental facility such as Haverford. Would this Court uphold his transfer to a maximum security institution on the recommendation of the director of the standard State mental facility without court approval?