In Re: Civil Court Commitment of William Guzan. Commonwealth of Pennsylvania, Appellant.

Argued May 9, 1979, before President Judge Bow-MAN and Judges CRUMLISH, JR., MENCER, BLATT, DI-SALLE, CRAIG and MACPHAIL. Judges WILKINSON, JR. and ROGERS did not participate.

*Marlene W. Jackson,* Assistant Attorney General, for appellant.

*Max A. Levine,* with him *Arnold M. Epstein,* for appellees.

OPINION BY JUDGE CRAIG, September 10, 1979:

The Department of Public Welfare (Department) appeals from the amended order of the Court of Common Pleas of Beaver County, entered December 14, 1977, directing the transfer of William Guzan (respondent) to the Western Center at Canonsburg, and ordering that he remain at Western Center until further order of the court.

After a hearing, the court found respondent to be mentally ill and mentally retarded, and initially directed that he be placed at Western Center for inpatient care under Section 406 of the Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, Special Sess. No. 3, P.L. 96, 50 P.S. §4406.[1]

The amended order of December 14, 1977 was a result of a disagreement between the staff at Valley View Adolescent Psychiatric Center, where respondent was residing, and the staff at Western Center, as to the appropriate date for respondent's transfer. Western Center required that they receive respondent on December 21, 1977. Dr. Berkey, at Valley View, requested an early January admission date so that respondent would be able to spend the holidays with his family, because Western Center had a ninety-day no-visitation policy.

The department takes issue with that part of the amended order directing that respondent "remain at Western Center until further order of court." The

---

[1]Originally, in 1975, Western State School and Hospital petitioned to have respondent transferred to Dixmont State Hospital, which petition was denied. Again in 1976 Western State petitioned for respondent's transfer to the adolescent unit of Woodville State Hospital. On April 21, 1976 the petition was granted and respondent was transferred. On July 15, 1977 Dr. Richard L. Berkey, M.D., of Valley View, petitioned the court to transfer or commit respondent to inpatient treatment at Western Center in Canonsburg, Pennsylvania.

department argues that a court of law does not have the authority to abrogate the department's statutory authority to decide when a civilly committed patient should be transferred, nor, if care or treatment becomes unnecessary, when a patient should be discharged.

Initially, Section 406 of the Act gives the court of common pleas, of the county in which a person resides, jurisdiction to order commitment of a person who is found to be in need of care or treatment.

Further, the section provides that:

In its order of commitment, said court may permit partial hospitalization or out-patient care, or if at any time thereafter the director shall determine such partial hospitalization or outpatient care to be beneficial to the person so committed, the same may be permitted by said court upon application by the director.

We agree with respondent's position that the committing court retains limited jurisdiction over the person committed. The section provides that the director must apply to the committing court for permission to change the nature (full hospitalization to partial hospitalization or outpatient care) of the commitment.

Secondly, Section 416(d) of the Act, 50 P.S. §4416 (d), provides the statutory basis for the committing court's limited involvement in the decision to transfer mentally disabled persons between institutions. The section provides that:

Whenever such mentally disabled person has been committed by a court under this act, transfers from local to State facilities or State to local facilities, shall be approved by the committing court.

The limits of Section 416(d) were set out in *Commonwealth ex rel. DiEmilio v. Shovlin*, 449 Pa. 177, 295 A.2d 320 (1972), as follows:

Under Section 416(d) it is clear that when it is recommended by the director of any state operated facility that an individual should be transferred from a maximum to a minimum security (local) institution the 'committing court' *must* approve the transfer and ordinarily no hearing will be required. Similarly if it is recommended by the director of any state operated facility that an individual be transferred from one minimum security (local) institution to another, the 'committing court' *must* approve said transfer and *ordinarily* no hearing will be necessary. If on the other hand, the recommendation is that the individual should be transferred from a minimum to a maximum security (state) institution, the Commonwealth must establish at a hearing that the individual's conduct is so potentially dangerous that he cannot be treated at the institution for civil committees, and that his illness could be beneficially treated only at a maximum security institution. (Emphasis in original.)

449 Pa. at 181, n. 7, 295 A.2d at 323 n. 7.

In *Eubanks v. Clarke*, 434 F. Supp. 1022 (1977 E.D. Pa. 1977) the court held that where a state has facilities for the mentally ill which differ significantly in the amount of restrictions on the rights and liberties of the patients, due process requires that the state place individuals in the least restrictive setting consistent with legitimate safety, care and treatment objectives. Accordingly, the court held "that the Due Process Clause of the fourteenth amendment entitles an involuntarily committed mental patient to a hearing when transferred to a hospital where the conditions are substantially more restrictive." *Eubanks, supra,* 434 F. Supp. at 1029.

The only justifiable purpose for commitment of the retarded is habilitation, and when the state involuntarily commits retarded persons it must provide "minimally adequate habilitation." *Halderman v. Pennhurst State School and Hospital,* 446 F. Supp. 1295, (E.D. Pa. 1977). Because the Commonwealth maintains facilities of varying degrees of restriction (as described in *Commonwealth ex rel. DiEmilio, supra,* state facilities are "maximum" restrictive facilities and local facilities are considered "minimum" facilities) the hearing requirement enunciated in *Eubanks, supra* for the mentally ill applies with even greater force to the mentally retarded: "individuals who have not broken any laws, . . . and are not in any way a danger to society." *Halderman, supra,* 44 F. Supp. at 1313.

Section 416, as interpreted by *Commonwealth ex rel. DiEmilio,* and *Eubanks,* defines the extent of the court's jurisdiction over the transfer of the committed person to the extent that the order in this case seeks to confer on the committing court greater supervisory controls, the court is without statutory authority to do so.

Thirdly, insofar as the lower court's order attempts to prohibit the respondent's discharge without a court order, the order is in violation of Section 418, 50 P.S. §4418. Where no period of commitment has been specified by the committing court, an individual committed under Section 406 may be released as soon as care and treatment in a facility "is no longer necessary" without first having sought or received court approval. *Commonwealth ex rel. DiEmilio, supra,* 449 Pa. at 181, 295 A.2d at 323.

Section 420 of the Act, 50 P.S. §4420, further provides that the Department may review any civil commitment made under the Act and may order the dis-

charge of any person so committed whenever the Department finds that the committed person is no longer in need of care and treatment in the facility. Finally, Section 423(6) of the Act, 50 P.S. §4423(6) provides that every person committed to any facility shall have the right to be released as soon as care and treatment in the facility is no longer necessary.

Hence, there is no statutory basis for the committing court's attempted intervention in the future discharge of respondent.

Respondent fears that, in cases like the present case, the Commonwealth may avoid difficult placements and treatments through premature discharges, especially where the Department is in the position to make unilateral discharge decisions. Hypothetical charges of bad faith on the part of the Commonwealth in its treatment or failure to treat mentally retarded individuals do not make a sufficient basis on which constitutional challenges can be sustained. Supposition and speculation as to future events will not support a constitutional challenge, and therefore, the potentiality is not properly before us. *Hoolick v. Retreat State Hospital*, 24 Pa. Commonwealth Ct. 218, 224, 354 A.2d 609, 612 (1976).

Because, under the Act, the lower court does not have authority to order that respondent remain at Western Center until its further order, we will strike that portion of the order.

Judge MENCER notes dissent.

## ORDER

AND Now, this 10th day of September, 1979, the order of the Court of Common Pleas of Beaver County, Civil Action No. 1659 of 1975, is modified so that the portion of the order directing that respondent remain at Western Center until further order of the court is stricken, and, as modified, is affirmed.