THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM H. CHILDS, Respondent, v. EXTRAORDINARY TRIAL TERM OF THE SUPREME COURT et al., Appellants.

**Writ of prohibition — Extraordinary Term of the Supreme Court — when writ will not be granted to prohibit trial of defendant at Extraordinary Term of Supreme Court because notice of appointment of such term was defective.**

1. The writ of prohibition is an extraordinary remedy for unusual cases, resorted to, not to correct errors, but in aid of substantial justice and to forbid the exercise of unauthorized power, and the writ is justified only by extreme necessity when the grievance cannot be redressed by ordinary proceedings.

2. Where the governor appointed an Extraordinary Trial Term of the Supreme Court for the county of New York at a fixed date, designating a justice to hold the term, and directing that a grand jury be drawn to serve thereat, and ordered that notice of the appointment be given by publication of his order once in each week for two successive weeks in two designated newspapers and the order was published in

**464** People ex rel. Childs *v.* Extraord. Trial Term.

[228 N. Y.]    Statement of case.    [April,

one of the papers, as directed, but in the other was published for two successive days in the same week, the defective publication was a technical irregularity merely, not a jurisdictional defect, and is not an error prejudicial to the rights of the relator who was indicted at said term; hence he is not entitled to an absolute writ of prohibition against his trial at said term. No injury now exists, nor is apprehension of injury enough to sustain the writ. Relator may, by the ordinary processes of appeal from any judgment rendered, secure relief from prejudical error if such error should develop.

*People ex rel. Childs* v. *Extraordinary Trial Term*, 184 App. Div. 829, reversed.

(Argued January 26, 1920; decided April 20, 1920.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 11, 1918, granting relator's application for an absolute writ of prohibition.

The facts, so far as material, are stated in the opinion.

*Edward Swann, District Attorney (Robert S. Johnstone, Robert D. Petty* and *Felix C. Benvenga* of counsel), for appellants. A failure to comply literally with the direction of the governor concerning the publication of notice of the Extraordinary Term does not affect the validity of the term or impair its jurisdiction. (*People ex rel. S. L. & T. Co.* v. *Supreme Court*, 220 N. Y. 487; *People* v. *Duffy,* 212 N. Y. 57; *Coffey* v. *Harlan County*, 204 U. S. 659; *Rogers* v. *Peck*, 199 U. S. 425; *Louisville & N. R. Co.* v. *Schmidt*, 177 U. S. 230; *Holmes* v. *Conway*, 241 U. S. 624; *Simon* v. *Craft*, 182 U. S. 427; *People ex rel. Berger* v. *Warden*, 176 App. Div. 602; *Thompson* v. *Tracy*, 60 N. Y. 31; *People ex rel. Hummel* v. *Trial Term*, 105 App. Div. 598; 184 N. Y. 30; *People ex rel. Jerome* v. *General Sessions*, 112 App. Div. 424; 185 N. Y. 504.) The " appointment " of the term by the competent authority confers the jurisdiction. The giving of notice was not of the essence of the thing required to be done to give jurisdiction; it was an incidental thing to be done after

People ex rel. Childs *v.* Extraord. Trial Term.   465

1920.]                    Opinion, per Pound, J.                    [228 N. Y.]

jurisdiction established; hence the statute is in that respect " directory." (*Comm.* v. *Davis,* 140 Mass. 485; *Elmendorf* v. *Mayor,* 25 Wend. 692; *People* v. *Carpenter,* 24 N. Y. 86; *Friar* v. *State,* 4 Miss. [3 How.] 422; *Blimm* v. *Comm.,* 70 Ky. [7 Bush] 320; *State* v. *Claude,* 35 La. Ann. 71; *Harman* v. *Copenhaver,* 89 Va. 836; *Collier* v. *State,* 20 Ark. 36; *State* v. *Shanley,* 38 W. Va. 516; 3 Bouvier Law Dict. 3130; Bishop Stat. Crimes [2d ed.], § 225; *People ex rel. Locke* v. *Common Council,* 5 Lans. 11; *Matter of Folsom,* 2 T. & C. 55, 56; *Lyth* v. *City of Buffalo,* 48 Hun, 175.)

*John B. Stanchfield, Isidor J. Kresel* and *J. Arthur Leve* for respondent.   The Appellate Division was correct in holding that the Extraordinary Trial Term of the Supreme Court was never properly convened and was without any jurisdiction to try the relator upon the pretended indictments found against him, since the publication was not in compliance with the order of the governor.   (*Doheny* v. *Worden,* 75 App. Div. 47; *Waters* v. *Waters,* 7 Misc. Rep. 519; *Gray* v. *J. of F. Pub. Co.,* 2 Misc. Rep. 260; *Matter of McIntyre* v. *Sawyer,* 179 App. Div. 535; *People* v. *Nugent,* 57 App. Div. 542; *Stenile* v. *Bell,* 12 Abb. Pr. [N. S.] 171; *People* v. *Damron,* 212 N. Y. 256.)

Pound, J.   The Judiciary Law (Cons. Laws, ch. 30), section 153, provides that " the governor may, when, in his opinion the public interest so requires, appoint one or more extraordinary special or trial terms of the Supreme Court.   He must designate the time and place of holding the same, and name the justice who shall hold or preside at such term, and he must give notice of the appointment in such manner as, in his judgment, the public interest requires."

Pursuant thereto Governor Whitman, on July 31, 1917,

30

issued his proclamation or order appointing an Extraordinary Trial Term of the Supreme Court to be held at the county court house in the county of New York on August 27, 1917, to continue so long as it might be necessary for the transaction of the business to be brought before it. He designated the Honorable John W. Goff, one of the justices of the Supreme Court, to hold the term and directed that a grand jury be drawn to serve thereat. He ordered that notice of the appointment be given by publication of his order in each week for two successive weeks in the *Morning Telegraph* and the *Sun*. The order was not published as directed by the governor. It was published once in each week for two weeks in the *Sun* and for two successive days in the same week in the *Morning Telegraph*.

Justice Goff summoned a grand jury and opened the term on the day appointed. This grand jury found a number of indictments and was discharged on January 18, 1918. On February 21, 1918, another grand jury was ordered drawn and was impaneled on March 19, 1918. It was charged to inquire into violations of the so-called Corrupt Practices Act in connection with the primary and general elections of the year 1917. On May 8, 1918, the grand jury found indictments against the relator and others, charging them with making and causing to be made a false statement concerning the expenditures of a political committee. They were thereupon arraigned, but pleading was deferred until May 22, 1918. A large amount of other business had been transacted by the court without objection, but relator, believing that defendants were proceeding without jurisdiction in the prosecution of such indictments, applied for and obtained a writ of prohibition, commanding them to refrain from proceeding further thereon. He, and the others indicted with him, had full knowledge of the existence of the extraordinary term and knew that their acts were before the grand jury for its consideration.

People ex rel. Childs *v.* Extraord. Trial Term.   467

1920.]                     Opinion, per Pound, J.                [228 N. Y.]

The omission to publish the order in strict conformity with its provisions, it has been held, left the Extraordinary Trial Term without jurisdiction. The opinion of the court below, in which three justices concur, states, with entire accuracy, that " the defective publication in the instant case is of no importance and the objection merely technical," and that the same objection, if made after judgment, would not be considered of much merit unless defendant could show that in some manner he has been deprived of a substantial right. This court has said in *People v. Duffy* (212 N. Y. 57, 63) speaking by Hiscock, J., of an alleged omission properly to file and publish an appointment of a new trial term duly made by the Appellate Division, that " The court itself was appointed by the Appellate Division, which had power to appoint it, and all of its proceedings were conducted in accordance with the due forms of law as prescribed by the Constitution and by the statute. It is not claimed that the defendant's rights were in any manner diminished or prejudiced by the alleged omission of which he complains, and under such circumstances his objection of a purely technical nature and outlining no real harm to him, even if otherwise well made, *will not be upheld for the purpose of reversing the judgment.*" The principle thus plainly stated is correct and controlling. Duffy made his objection to the jurisdiction of the court from the beginning and through out his trial. His rights were no less and no greater than those of the relator in the case before us. If it could be said that such an objection could be waived, Duffy did not waive it. If the court did not have jurisdiction at the beginning of the trial, it did not acquire it by exercising it. The present policy of the criminal law is to disregard technical errors which do not affect the substantial rights of the parties. It would be a singular anomaly to say that no real harm happened to the defendants who were actually convicted at this Extraordinary Trial Term, but that relator was threatened with the great and irremedi-

468    People ex rel. Childs *v.* Extraord. Trial Term.

[228 N. Y.]            'Opinion, per Pound, J.            [April,

able danger of trial by an unauthorized tribunal. The public interests, which require that every citizen may freely attend the sittings of every court within the state and have some general notice of such sittings, are not promoted by exact compliance with the terms of the order. The governor, in his discretion, might as effectively have ordered but one publication in one paper. The error was an irregularity merely, not a jurisdictional defect. Such irregularities may or may not be prejudicial, but they do not, standing alone, divest the court of jurisdiction.

An objection which, if made at the beginning of a long and expensive trial, would, after conviction, be disregarded as the merest technicality, does not acquire sufficient importance to halt the trial entirely merely because a writ of prohibition is applied for. The writ of prohibition is an extraordinary remedy for unusual cases, resorted to, not to correct errors, but in aid of substantial justice and to forbid the exercise of unauthorized power. Selden, J., said in *Quimbo Appo* v. *People* (20 N. Y. 531, 542) that " it is far better to prevent the exercise of an unauthorized power than to be driven to the necessity of correcting the error after it is committed." Taking this liberal statement of the rule, although it has been qualified by later cases which hold that the writ is justified only by extreme necessity when the grievance cannot be redressed by ordinary proceedings (*People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383, 396), the conclusion is inevitable that if no error prejudicial to relator's rights would appear at the end of the trial, to be corrected on appeal, the trial itself may safely be proceeded with. No injury now exists nor is apprehension of injury enough to sustain the writ. (*People ex rel. Ballin* v. *Smith,* 184 N. Y. 96.) Relator may, by the ordinary processes of appeal from any judgment rendered, secure relief from prejudicial error, if prejudicial error develops. (*People ex rel. Woodbury* v. *Hendrick,* 215 N. Y. 339, 350; *People ex rel. Hummel* v. *Trial Term,* 184 N. Y. 30.) It follows that the unusual cir-

cumstances do not exist which call for intervention by prohibition when a tribunal is about to concern itself with matters not within its jurisdiction.

The order appealed from should be reversed and the writ of prohibition dismissed and motion denied, without costs.

Hiscock, Ch. J., Chase, Cardozo and Andrews, JJ., concur; Collin and Crane, JJ., dissent.

Order reversed, etc.