OPINION OF THE COURT
David B. Saxe, J.
The principal issue that I must resolve in connection with this extraordinary application is whether the New York City Commission On Human Rights (NYCCHR) may vacate or *693 modify its prior order (even after it has beeil judicially affirmed) when it is learned that the complaining witness lied at the hearing before the Commission and submitted into evidence a forged document.
A subsidiary issue involves what is, in essence, a motion to disqualify the Corporation Counsel from advising the NYCCHR on the means to rectify the results of the proceeding previously held before it which may have been tainted by the fraud perpetrated by the complaining witness Ms. Brenda Alvarez. It is Ms. Alvarez’ claim that the Corporation Counsel was her lawyer and that this fact now bars them from advising the NYCCHR with respect to the reopening of those proceedings in order to investigate these charges of fraud. It is the petitioner’s presumed theory that this advice would imperil confidences she gave to the Corporation Counsel.
A review of the pertinent facts is necessary. On August 6, 1981 Ms. Brenda M. Alvarez instituted a complaint at the NYCCHR, alleging that her employer Mr. Norman Rudow sexually harassed her.
During the hearing she testified that on July 22, 1981 she visited Dr. Nam Geun Yoo in Queens to obtain some medication that would relieve her anxiety resulting from the incident. She stated that Dr. Yoo prescribed Valium for her and wrote a note regarding her condition. This note was introduced into evidence at the hearing.
The NYCCHR found that Mr. Rudow and the company were guilty of unlawful discriminatory employment practices on the basis of sex in violation of Administrative Code of the City of New York § Bl-7.0.
Thereafter, Mr. Rudow sought review of the Commission’s decision in the State Supreme Court. He lost and the Commission’s order was confirmed. (Rudow v New York City Commn. on Human Rights, 123 Misc 2d 709 [Sup Ct, NY County 1984].)
Rudow appealed to the Appellate Division. Before the appeal was heard, Ms. Alvarez’ perjured testimony came to light as well as her reliance on a forged physician’s note and Rudow made a motion to supplement the record with this information. The motion contained an affidavit by Dr. Yoo stating that he had no record of a visit by Brenda Alvarez and that the handwriting on the note which was introduced into evidence at the hearing was not his but appeared to be that of a former employee. At this point, it appears that Lois Whitman, Esq., the General Counsel of the NYCCHR spoke ex *694 parte to the hearing officer who had heard and decided the case at the Commission level. She apparently advised him of the new matter and requested information as to how this might affect his original decision. As a result of this discussion, Ms. Whitman proceeded to respond to Rudow’s motion by noting that the new evidence went only to a "trivial detail of damages.” At this point, neither the chair of the NYCCHR, Ms. Marcella Maxwell, nor anyone at the Corporation Counsel’s office was made aware of this serious turn of events.
On March 7, 1985, the First Department granted Rudow’s motion to supplement the record on appeal, but nevertheless affirmed the order of the Supreme Court denying his application to vacate the NYCCHR’s decision and order. (Rudow v New York City Commn. on Human Rights, 109 AD2d 1111 [1st Dept 1985].)
Rudow then moved before the Court of Appeals for permission to appeal the order of the Appellate Division, First Department. That motion is still pending. The Corporation Counsel has requested that the Court of Appeals defer its determination to permit additional time so that these new matters might first be placed before the NYCCHR.
Ms. Alarez, believing that the NYCCHR is precluded from taking any further action in this case, has moved pursuant to CPLR article 78 for an order in the nature of a writ of prohibition seeking to prevent the respondents here from reopening or changing their prior determination.
It is Ms. Alvarez’ basic contention that the NYCCHR not alter, amend or vacate its order in this matter. She contends that Administrative Code § Bl-9.0 divests the agency of jurisdiction once an appeal is taken and requires an application to the court before the matter may be remitted to the agency for the taking of additional evidence.
I believe that the cases hold otherwise. It is a long-standing rule of administrative law in this State that an administrative agency is not precluded from setting aside or reconsidering a determination if it resulted from illegality or fraud. (People ex rel. Finnegan v McBride, 226 NY 252 [1919].) The fact that an administrative order may have been judicially affirmed does not prevent an administrative agency from exercising its jurisdiction to reconsider its determination where that agency’s determination may have been tainted by fraud. (Matter of Lugo v McGoldrick, 285 App Div 465 [1st Dept 1955].) There, the court stated:
*695 "We think * * * if the jurisdiction of the commission in the matter is clearly understood and defined, that no invasion of the jurisdiction of the court is involved.
"The commission may not recall an order of the court. Indeed a recall of its own certificate in and of itself has no effect upon an order of the court. The court may be moved, however, upon the new action of the commission, to recall its own order within the time that it has to modify or annul an order * * *
"We do not undertake, however, to define the permissible procedure. All we are required to pass upon is the jurisdiction of the commission to entertain the application to rescind a certificate of eviction upon the ground that it has been procured by fraud. We hold that such jurisdiction exists despite the fact that a final order may have issued from the Municipal Court. It would, of course, remain for the court to consider whether the action of the commission and the ground of its action warrant the court in recalling its own order” (pp 466-467).
The petitioner also contends that because the Appellate Division had all of the facts before it, its affirmance of the dismissal of Rudow’s petition effectively decided the allegations of perjury and forgery raised by Rudow. I do not agree with this view at all. All that the Appellate Division’s summary affirmance can be taken to mean is that the Commission’s determination was supported by sufficient evidence. What consideration the Appellate Division may have given to these new allegations is unclear. This is especially so in view of the fact that Ms. Whitman, in her papers before the Appellate Division, referred to the tainted evidence as merely "tangential” to the issue of whether sexual harassment had been practiced. The role of the Appellate Division in considering the matter before it was limited to the narrow standard applicable to the review of an administrative determination. The Commission on Human Rights is not limited in such a manner. I conclude therefore that the Appellate Division’s summary affirmance does not preclude review.
The other claim asserted by the petitioner is that the Corporation Counsel should be disqualified from participating in this proceeding based on her contention that the Corporation Counsel already represented her in the original court proceeding which arose from a complaint the petitioner filed with the Commission.
*696 I find that this claim is without merit. I further hold that the Corporation Counsel was never petitioner’s lawyer and that no genuine lawyer-client relationship ever existed between the two.
The petitioner predicates her contention of an attorney-client relationship on the fact that the Corporation Counsel’s name was placed on briefs submitted in court on behalf of the NYCCHR and the petitioner. However, this did not constitute the performance of legal services to the petitioner. The sole reason the Corporation Counsel was named on the brief is based on a statute which mandates such a listing in order to enable the Commission’s General Counsel, Ms. Whitman, to appear in court for the Commission.
An attorney-client relationship comes into being only as a result of some purposeful communication. The test is "whether the would-be client reasonably believed that he approached the attorney with a 'manifest intent to seek legal advice’ and whether the attorney actually performed professional services in his capacity as a legal advisor.” (Premium Prods. Sales Corp. v Chipwich, Inc., 539 F Supp 427, 433 [US Dist Ct, SDNY 1982].) Based on the facts set out, I find that no such communication occurred here. Clearly, Ms. Alvarez never sought legal advice from the Corporation Counsel’s office. Her dealings were solely with Ms. Whitman and the Commission’s staff. In this regard, I cannot accept her theory that her attorney-client relationship with the Commission Counsel, Ms. Whitman, vicariously binds the Corporation Counsel. While this theory would have application in the context of a private law firm (see, e.g., Cardinale v Golinello, 43 NY2d 288 [1977]) it does not apply to the relationship between New York City agencies and the Corporation Counsel. The Corporation Counsel’s office is separate and distinct from the Commission’s legal staff; the two cannot be regarded for ethical purposes as a single entity. Ms. Whitman, as the Commission’s General Counsel, at all times acted as the lawyer for the Commission.
Whatever actual knowledge the Corporation Counsel may have had regarding the Alvarez case came only after the Appellate Division had issued its ruling. This after-the-fact knowledge did not amount to the rendition of legal services to Ms. Alvarez.
Finally, Ms. Alvarez sought the aid here of the NYCCHR, a government agency. She was aware, or should have been, that she was communicating with lawyers for the government and, *697 as such, it is the responsibility of government lawyers .to enforce government interests, not private ones.
I find that the extensive discussion regarding issues of professional ethics and attorney disqualification has obfuscated the underlying issue here which involves the Corporation Counsel’s professional judgment that a city agency should not permit charges of perjury and forgery to go unexamined. This is exactly what the Corporation Counsel has done in this case. He has merely asked the NYCCHR to assess whether the integrity of a Commission proceeding was compromised by Ms. Alvarez’ lie and submission of a forged document into evidence. The argument made that the Corporation Counsel has "switched sides” is nothing short of ridiculous.
In conclusion, the relief sought by the petitioner amounts to a request for a writ of prohibition. But prohibition is an extraordinary remedy which is not favored, is always discretionary and is never granted unless the applicant has a clear right to the relief requested and no other legal remedy to obtain that relief exists. (See, La Rocca v Lane, 37 NY2d 575 [1975], cert denied 424 US 968 [1976].) And, the law is clear that the remedy of prohibition should only be available "in aid of substantial justice”. (People ex rel. Childs v Extraordinary Trial Term, 228 NY 463, 468 [1920].)
The public interest requires and notions of substantial justice demand that these matters be fully investigated so that the integrity of, and public confidence in, the proceedings of the NYCCHR will be maintained.
Perhaps at no time has a party who came to a government agency (as petitioner did here) for redress of a grievance later petitioned to prevent that agency — and the entire law department of the municipal government of which that agency is a part — from ensuring the integrity of the handling of the grievance by that agency.
The application made here, which amounts to a request for a writ of prohibition and an order for the disqualification of the Corporation Counsel is denied in all respects.
The issue of Mr. Rudow’s guilt or innocence is not before the court at this time. Without doubt, sexual harassment is a serious matter. But, unless the public believes that the Commission will carefully scrutinize all facts and all allegations and then decide cases without fear or favor, based strictly on the facts as they emerge in the record, and after a fair opportunity for both sides to present their case, the Commis *698 sion will lose credibility and thus ultimately its ability to vindicate the rights of victims. The Commission’s commitment to the eradication of sexual harassment and similar discriminations can be effective only if the integrity of its proceedings is free from doubt. That is not the situation as it stands now: a complaining witness has lied to the Commission at its hearing and submitted into evidence a forged document; the hearing officer who wrote the Commission’s order and the then General Counsel of the Commission, Ms. Whitman, discussed the aspects of the perjury and the forgery ex parte before Ms. Whitman submitted her response to Mr. Rudow’s motion to supplement the record in the Appellate Division. No mention was made of these new matters at that time to either the chair of the Commission, Ms. Maxwell, or the Corporation Counsel’s office. The only way in which this cloud over the NYCCHR’s proceedings in this case can be removed is by a fresh exploration of the charges previously made.
So, it is directed that the Commission proceed in this matter with the institution of a new hearing within 30 days from the date of service of a copy of an order to be settled herein with notice of entry thereon. The former hearing officer shall not have any further responsibility in this matter.