SELFSPOT, INC. d/b/a The Fitness
Factory, Appellant,

v.

The BUTLER COUNTY
FAMILY YMCA.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2002.
Decided Feb. 25, 2003.

Fred Greenberg, Narberth, for appellant.

Lawrence P. Lutz, Butler, for appellee.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, J., and PELLEGRINI, J., and LEADBETTER, J., and COHN, J., and SIMPSON, J., and LEAVITT, J.

OPINION BY Judge SMITH–RIBNER.

Selfspot, Inc. d/b/a The Fitness Factory (Selfspot) appeals from an order of the Court of Common Pleas of Butler County that sustained preliminary objections filed by The Butler County Family YMCA (Butler YMCA) and dismissed Selfspot's complaint in equity against the Butler YMCA filed under the Institutions of Purely Public Charity Act (Act), Act of November 26, 1997, P.L. 508, 10 P.S. §§ 371–385, on the basis that the court lacked subject matter jurisdiction. Selfspot raises first whether the provision of Section 8(a) of the Act, 10 P.S. § 378(a), that "[i]t is the policy of this act that institutions of purely public charity shall not use their tax-exempt status to compete unfairly with small business" is intended to prohibit charities that own and operate commercial businesses from competing unfairly against small business, and second whether a purely public charity may rely on the charitable purpose of "promotion of health" set forth in its charter to justify its ownership of a commercial health club after the effective date of the Act in 1997, when the legislature intentionally deleted "promotion of public health" as a charitable purpose and expressly repealed all laws that were inconsistent with the new definition of charitable purpose.

I

As set forth in Selfspot's complaint, Selfspot is a taxpaying "small business" as defined by the Act that operates a com-

mercial health club in Seven Fields Borough, Butler County, Pennsylvania, providing a variety of health and wellness services. The Butler YMCA, an "institution of purely public charity" under the Act, has announced plans to build a new, 35,000–square–foot, full-service fitness center along the Route 19 corridor in or near Cranberry Township, which will feature a state-of-the-art health club and will operate as a tax-exempt charity. Selfspot alleges that the proposed facility, roughly five miles from Selfspot's health club, will serve an area that is the home or place of business of ninety-six percent of Selfspot's members and that it will provide health club services to adults able to purchase such services from taxpaying neighborhood health clubs, in direct competition with Selfspot. Selfspot avers that tax-exempt charities enjoy many advantages in constructing and operating commercial health clubs, including among other things tax-deductible charitable contributions for capital investment and exemption from taxes including real estate and corporate income taxes.

Most sections of the Act concern the relationship between institutions of purely public charity and political subdivisions or other related matters, generally in regard to taxation. Section 8, 10 P.S. § 378, however, relates to unfair competition with small businesses, and it provides in part:

> (a) **Intent.**—It is the policy of this act that institutions of purely public charity shall not use their tax-exempt status to compete unfairly with small business.
>
> (b) **General rule.**—An institution of purely public charity may not fund, capitalize, guarantee the indebtedness of, lease obligations of or subsidize a commercial business that is unrelated to the institution's charitable purpose as stated in the institution's charter or governing legal documents.
>
> . . . .
>
> (h) **Existing business arrangements.**—An institution of purely public charity that prior to the effective date of this section funded, capitalized, guaranteed the indebtedness of, leased obligations of or subsidized a commercial business may continue to own and operate such businesses without violating subsection (b) as long as the institution does not substantially expand the scope of the commercial business. In the event an injunction is issued under subsection (i), the effect of such injunction shall be limited to restraining the substantial expansion of the scope of the commercial business which was initiated after the effective date of this section.
>
> (i) **Remedies.**—The Department of State shall establish a system of mandatory arbitration for the purpose of receiving all complaints from aggrieved small businesses relating to an institution of purely public charity's alleged violation of this section. Upon receipt of such complaint, the department shall direct that the complaint be resolved as provided in this subsection.
>
> . . . .
>
> (9) Either party may initiate a de novo appeal from the arbitrator's decision in the court of common pleas of the judicial district in which the arbitration took place within 30 days of the arbitrator's decision.

On September 22, 1999, Selfspot filed a complaint with the Department of State seeking to enjoin the construction and operation of the Butler YMCA's proposed health club facility as a tax-exempt purely public charity. Although the arbitrator concluded that the proposed facility might well compete unfairly with Selfspot, he determined that Selfspot had not, on the face of its complaint, established that such commercial business activity is unrelated

to the Butler YMCA's charitable purpose stated in its original charter of "the promotion of the religious, intellectual, social and physical welfare of young men," which was later extended to all persons regardless of age, race, sex, ethnicity, religion, creed, handicap or ability to pay. The arbitrator concluded that the complaint therefore did not establish a violation of Section 8(b) of the Act and that it consequently also did not establish a violation of Section 8(h), and he terminated the arbitration. Selfspot timely filed an appeal de novo with the trial court.

In its complaint in the trial court, Selfspot's Count I claimed that the operation of the proposed Butler YMCA facility would compete unfairly against Selfspot in violation of Section 8(a) of the Act and requested an injunction prohibiting unfair competition. Count II asserted that the ownership and operation of the proposed facility as a purely public charity would violate Section 8(b) and Section 8(h) because it was not consistent with any recognized and approved charitable purpose and requested an injunction barring the Butler YMCA from building, owning and/or operating the new facility. Count III, in the alternative, requested a declaration that the construction, ownership and/or operation of the proposed facility is not related to a recognized and approved charitable purpose under the Act or that, if it is related to such a purpose, the ownership and operation of the facility would result in unfair competition against Selfspot.

The Butler YMCA's preliminary objections first asserted that the trial court

lacked subject matter jurisdiction to adjudicate Selfspot's claims because Selfspot did not raise a permissible claim under Section 8 of the Act. Although Section 8 provides the only remedy for a small business claiming unfair competition, Selfspot was asking the court to examine whether the Butler YMCA's activity of operating a fitness center is a proper charitable purpose pursuant to Section 5 of the Act, 10 P.S. § 375, which could be done only by a political subdivision pursuant to Section 6(b) of the Act, 10 P.S. § 376(b).[1] The trial court noted that the Court of Common Pleas of Delaware County had reviewed the same issue in *Dynamic Sports Fitness Corp. of America, Inc. v. Community YMCA of Eastern Delaware County, Ridley Area Branch* (C.P. Del., No. 98–15569, filed August 4, 1999), and had decided that neither Section 8 nor any other Section permitted a small business to raise the issue of unfair competition on the basis that the activity was not purely charitable. Section 6 provides for such a challenge, but it refers only to a challenge by a political subdivision. The trial court concluded that Selfspot's complaint did not raise a proper claim under Section 8 and therefore sustained the preliminary objection and dismissed the complaint.

This Court decided the appeal in *Dynamic Sports Fitness Corp. of America, Inc. v. Community YMCA of Eastern Delaware County, Ridley Area YMCA Branch,* 768 A.2d 375 (Pa.Cmwlth.2001), on February 1, 2001. There the Court held that the trial court clearly had jurisdiction to review the claims of a health

---

1. Section 5(b), relating to charitable purpose, enumerates purposes that satisfy that particular criterion for status as a purely public charity, including (1) relief of poverty, (2) advancement of education, (3) advancement of religion, (4) "[p]revention and treatment of disease or injury, including mental retarda-

tion and mental disorders," (5) government or municipal purposes and (6) "[a]ccomplishment of a purpose which is recognized as important and beneficial to the public and which advances social, moral or physical objectives."

club under the Act against a YMCA that was expanding its own health-club type facilities. The Court concluded, however, that the health club's Count II, asserting unfair competition in violation of Section 8(a) of the Act, failed to state a claim because Section 8 provided for a cause of action only under Section 8(b). The health club's Count I asserted that even if the YMCA's activities related to purposes set forth in the articles of incorporation, the activities were not "charitable" as defined in Section 5(b) of the Act. The Court agreed that in construing Section 8(b) a court or an arbitrator must take guidance from Section 5(b), noting that Section 8(b) provides that an institution of purely public charity may not engage in a commercial business "that is unrelated to the institution's charitable purpose as stated in the institution's charter or governing documents" and that the meaning of "charitable purpose" is delineated in Section 5(b).

The Court examined the purposes stated in the YMCA's amended articles of incorporation, which included maintaining a fellowship for the development of healthy spirit, mind and body and establishing programs that promote good health, both mental and physical, among other objectives. The YMCA's health club, although a commercial enterprise, clearly was related to the charitable purposes set forth in the articles of incorporation, the Court concluded. Further, the Court deemed the provision of Section 5(b)(6) that charitable purposes include those that are "recognized as important and beneficial to the public" and that advance "social, moral or physical objectives" to encompass the purposes set forth in the articles. The Court acknowledged that the legislature modified the definition of "charitable purpose" in adopting the Act by not including the phrase "promotion of health," which had appeared in the definition of "charitable purposes" in Section 5103 of the Nonprofit Corporation Law of 1988, *as amended,* 15 Pa.C.S. § 5103. The Court noted, however, that "promotion of health" was not expressly excluded, and it concluded that this may fall under Section 5(b)(6) if circumstances warrant. Quoting from a California decision stating that the purpose of promotion of "physical health" is related and intertwined as an integral part of the general charitable mission of the YMCA, the Court concluded that the health club had failed to set forth a prima facie case of a violation of Section 8 of the Act, and the Court affirmed the trial court's dismissal of the complaint.

## II

In the present case, the Court must first address the trial court's conclusion that it lacked subject matter jurisdiction.[2] The Court agrees with the panel decision in *Dynamic Sports Fitness Corp.* that a court's subject matter jurisdiction over a controversy concerns whether the court is competent to determine controversies of the general class to which the case presented belongs. *Department of Public Welfare v. Court of Common Pleas of Phil-*

2. When reviewing orders disposing of preliminary objections that raise a question of subject matter jurisdiction, the Court's review is to determine whether the trial court properly determined whether the law will bar recovery due to a lack of subject matter jurisdiction. *Borough of Brentwood, Allegheny County v. Brentwood (Borough) School Dist.,* 662 A.2d 675 (Pa.Cmwlth.1995). Also review of an order sustaining a preliminary objection in the nature of a demurrer is to determine whether on the facts alleged in the complaint the law states with certainty that no recovery is possible, accepting as true all well-pled allegations of material fact and inferences reasonably deducible therefrom and resolving any doubts in favor of overruling the demurrer. *Hawks by Hawks v. Livermore,* 157 Pa.Cmwlth. 243, 629 A.2d 270 (1993).

*adelphia County,* 506 Pa. 410, 485 A.2d 755 (1984). This is a different question from that of a party's standing to bring an action or to assert a claim or a contention that a claim is subject to a demurrer. *Dynamic Sports Fitness Corp.* Under its general statutory jurisdiction pursuant to Section 931 of the Judicial Code, *as amended,* 42 Pa.C.S. § 931, and under Section 8(i)(9) of the Act, the trial court had subject matter jurisdiction over Selfspot's challenge to the Butler YMCA's proposal. *Id.* The trial court's conclusion that it could not adjudicate the matter because Selfspot failed to state a proper claim was in essence the sustaining of a demurrer.

■ Selfspot first argues that the use of the word "shall" in Section 8(a) of the Act that "institutions of purely public charity shall not use their tax-exempt status to compete unfairly with small business" should be construed to be mandatory, noting that the legislature named Section 8 of the Act "Unfair competition with small businesses"[3] and that Section 8(i) refers to remedies for alleged violations "of this section," not just of Section 8(b). Selfspot asserts that the language of the Act does not limit violations to Section 8(b) and that the rule of statutory construction requiring a court to interpret and construe an act so as to give effect to all of its provisions, Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a), requires allowing a claim under Section 8(a).

The Court notes, however, that the language of Section 8 clearly does indicate that Section 8(b) embodies the substantive prohibition of that Section. Section 8(a) is headed "Intent," and it does not purport to do more than express the legislature's general policy regarding unfair competition in adopting the Act. Section 8(b) is headed "General rule" and it specifies prohibited conduct. Section 8(c), 10 P.S. § 378(c), relating to exceptions, provides that "[i]nstitutions of purely public charity are not in violation of subsection (b) if any of the following apply...." Similarly, Section 8(e), (f), (g) and (h), 10 P.S. § 378(e), (f), (g) and (h) all refer to activities that may be undertaken without violating "subsection (b)." Thus Section 8(b) and its qualifications explain what "to compete unfairly" under Section 8(a) means, and Section 8(a) does not provide an independent basis for a cause of action, as the Court concluded in *Dynamic Sports Fitness Corp.*

■ The Court further agrees with the conclusion of *Dynamic Sports Fitness Corp.* that when a small business raises a challenge under Section 8(b) claiming that a charity is engaging in a public business "unrelated to the institution's charitable purpose" as stated in the charter, the arbitrator or court must look to the Section 5(b) explanation of charitable purpose as well as to the charter to decide the question. Thus a small business may raise and an arbitrator or court may consider a claim that a particular activity is unrelated to a charitable purpose under Section 5(b).[4]

■ Next Selfspot argues that this Court erred in *Dynamic Sports Fitness*

---

3. This name is the "heading" of Section 8, not the title or preamble as Selfspot implies, but Section 1924 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1924, does provide in part that "[t]he headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof."

4. This conclusion disposes of the Butler YMCA's first two arguments on its counter-stated questions involved that the trial court lacked subject matter jurisdiction based on an assertion that only a political subdivision may challenge the charitable nature of an activity under the Act.

*Corp.* in concluding that "promotion of health" remains a recognized charitable purpose in Pennsylvania after the November 1997 effective date of the Act. It notes that the legislature deleted "promotion of health" (which was expressly included in the definition of charitable purpose in Section 5103 of the Nonprofit Corporation Law of 1988) as an enumerated "charitable purpose" under Section 5 during its deliberations, substituting "[p]revention and treatment of disease or injury, including mental retardation and mental disorders" in its place. It argues that many activities that serve to improve the health of individuals would fall under "promotion of health," such as private tennis or golf clubs, vegetarian restaurants, dance studios or retail bicycle stores. The legislature also repealed all other acts and parts of acts insofar as they are inconsistent with the Act. The courts have long held that a change in language in subsequent statutes on the same subject matter indicates a change of legislative intent. *Haughey v. Dillon*, 379 Pa. 1, 108 A.2d 69 (1954). Selfspot cites cases such as *Deremer v. Workmen's Compensation Appeal Board*, 61 Pa.Cmwlth. 415, 433 A.2d 926 (1981), for the proposition that deletion of statutory language renders such language inoperative and indicates that the legislature revealed a different intent.

Selfspot asserts that the majority in *Dynamic Sports Fitness Corp.* should have applied the maxim "expressio unius est exclusio alterius," which means essentially that where certain things are specifically designated all omissions should be understood as exclusions. *Latella v. Unemployment Compensation Board of Review*, 74 Pa.Cmwlth. 14, 459 A.2d 464 (1983). Further, the interpretation of "promotion of health" as a valid charitable purpose is contrary to *City of Pittsburgh v. Board of Property Assessment, Appeals and Review*, 129 Pa.Cmwlth. 69, 564 A.2d 1026

(1989), and *Appeal of Sewickley Valley YMCA* (C.P. Allegheny, No. GD 97–21302, filed April 19, 2001), *aff'd*, 774 A.2d 1 (Pa. Cmwlth.2001).

The former·case, decided under the test stated in *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985), later codified and elaborated upon in the Act, concerned the new, eight-floor facility constructed by the YMCA in downtown Pittsburgh, which included gyms and squash, handball and racquetball courts, among other things. Dormitory rooms were not provided, and most memberships were paid at substantial "gold" or "silver" levels, although the trial court had not quantified the percentages before concluding that the entire facility did not function as a purely public charity and did not qualify for tax exemption. This Court vacated the decision and remanded with directions to make findings as to the nature and extent of use on each of the facility's eight floors. The latter case involved a YMCA that had a renovated fitness center occupying 5497 square feet with amenities similar to those of a fitness club and that leased 1022 square feet to a commercial rehabilitation center. The trial court determined that the exemption issue was readily resolved against the fitness center and leased space, but it approved exemption for the remaining area, and this Court affirmed.

Selfspot requests that the Court overrule *Dynamic Sports Fitness Corp.* entirely. The Court notes that *Dynamic Sports Fitness Corp.* held only that "promotion of health" may be a charitable purpose under Section 5(b)(6) of the Act if circumstances warrant, not that it always is so. The Court does agree, however, that *Dynamic Sports Fitness Corp.* must be overruled to the limited extent that it held that "promotion of health" is necessarily intertwined with the charitable mission of a YMCA, such that a complaining small busi-

ness cannot state a claim under Section 8 by challenging a YMCA's provision of new or expanded commercial health-club type facilities. Under *City of Pittsburgh* and *Appeal of Sewickley Valley YMCA,* a YMCA's providing health-club facilities primarily to paying customers in competition with similar small businesses may give rise to a valid claim under the Act. Because Selfspot's complaint was dismissed on preliminary objections, any decision by this Court on the precise nature and extent of the uses of the proposed YMCA facility would be premature. Under its standard of review, the Court cannot say with certainty that no recovery is possible, and the trial court's order must be reversed and the case remanded for further proceedings.[5]

LEADBETTER, SIMPSON and LEAVITT, JJ., dissent.

### ORDER

AND NOW, this 25th day of February, 2003, the order of the Court of Common Pleas of Butler County sustaining the preliminary objections of The Butler County Family YMCA and dismissing the complaint of Selfspot, Inc. is reversed, and this case is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

---

5. The Butler YMCA also argues that Selfspot failed to state a claim because it did not allege that the challenged activity was unrelated to a charitable purpose as stated in the YMCA's charter and did not attach a copy of that document to the complaint. This lapse on the part of Selfspot was readily subject to amendment, and the YMCA attached the document to its preliminary objections. A fair inference from Selfspot's pleading is that the YMCA's operation of the fitness center as described could not be related to any proper charitable purpose stated in the charter. The YMCA also asserts that Selfspot makes an argument that the construction of the new facility constitutes impermissible expansion of the scope of the YMCA's activities under Section 8(h) of the Act. This argument is not raised in Selfpost's brief, but the parties may contest the issue on remand. It will be better subject to resolution after development of the facts.